WILLIAM BLACK v. THE STATE.

No. 4551.    Decided November 21, 1917.

**1.—Murder—Declarations of Co-conspirators.**

The acts and declarations of a co-conspirator, after the homicide or termination of the matter involved in the conspiracy, are not admissible in evidence against anyone except the declarant. Following Cox et al v. State, 8 Texas Crim. App., 256, and other cases.

**2.—Same—Bill of Exceptions—Supporting Testimony.**

Where, upon trial of murder, a co-defendant testified for the State, it was error to admit in evidence statements of said co-defendant after he had talked to other witnesses and after the examining trial in the absence of the defendant, that the defendant had made it up with him to kill the deceased, etc., to support him, and the qualification by the court of one of the bills of exceptions that said co-defendant on cross-examination admitted that he had made contra-

dictory statements without further explanation or reference to matters about which he testified, were not sufficient. Prendergast, Judge, dissenting.

### 3.—Same—Evidence—Acts of Third Parties.

Upon trial of murder it was error to permit witnesses to testify that they saw the wife of defendant, in his absence, commit indiscretions with the deceased, the bill of exceptions showing that defendant knew nothing of this conduct on the part of his wife before the killing. Prendergast, Judge, dissenting.

### 4.—Same—Evidence—Husband and Wife.

Where, upon trial of murder, defendant placed his wife upon witness stand, who testified to an alibi and nothing more, it was reversible error to introduce in evidence by way of cross-examination matters of conduct between deceased and defendant's wife, etc., and other matters not elicited in the examination in chief.

### 5.—Same—Evidence—Acts of Third Parties.

Upon trial of murder it was error to permit a witness to testify that he had seen deceased and defendant's wife on several occasions in the absence of the defendant and that their conduct was quite reprehensible; it not being shown that defendant was informed of the fact prior to the killing. Following Young v. State, 59 Texas Crim. Rep., 137. Prendergast, Judge, dissenting.

### 6.—Same—Evidence—Horse Tracks—Opinion of Witness.

Where, upon trial of murder, a State's witness testified in a general way that he followed horse tracks going from the neighborhood of where the homicide occurred to a certain point, and it was not shown that he measured them or compared them except by noticing them on the ground, etc., the same was not sufficiently specific and should not have been admitted, as it was the mere opinion of the witness. Following Tanksley v. State, 51 Texas Crim. Rep., 174. Prendergast, Judge, dissenting.

Appeal from the District Court of Falls. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of murder; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*George Carter* and *Nat Lewellyn,* for appellant.—On question of tracks: Tanksley v. State, 101 S. W. Rep., 234.

On question of conduct of third parties: Young v. State, 127 S. W. Rep., 1058.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of contradicting of witness: Dawson v. State, 34 Texas Crim. Rep., 263; James v. State, 32 id., 508; Moore v. State, 31 id., 236.

Upon question of tracks: Thompson v. State, 45 Texas Crim. Rep., 403; Cordes v. State, 54 id., 310.

On question of motives: Anderson v. State, 53 Texas Crim. Rep., 347; Millner v. State, 75 Texas Crim. Rep., 22, 169 S. W. Rep., 899.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder, his punishment being assessed at twenty-five years confinement in the penitentiary.

The State relied upon the fact that appellant and Virgil Vasser killed Green Vasser, the father of Virgil. It is deemed unnecessary to go into a statement of the facts. Virgil Vasser turned State's evidence and testified. There are two or three bills of exception reserved to the action of the court permitting certain witnesses to testify to statements made by Virgil Vasser, who was also called Boozer Vasser. These statements were made after the examining trial, and after Boozer Vasser had talked to DeGraffenreid in the absence of appellant. The sheriff of Falls County, one of the witnesses, testified: "I talked to Boozer Vasser after the examining trial and after he had talked to Flem DeGraffenreid, while he was in jail of Falls County in the absence of Will Black. Boozer told me that he killed his father; that Will Black got him to kill him; that Will Black made it up with me on Monday evening first; then, Tuesday evening he seen him again and he made this proposal to him, and he says that Will Black told him that on Tuesday evening, says: 'I will be down there in the morning, and want you to do me a favor,' etc., without going into further details of this bill of exceptions. It contains quite a number of statements occurring between Boozer or Virgil Vasser and DeGraffenreid. What is here said is also said with reference to other bills of exception showing similar statements made by Virgil or Boozer Vasser after the homicide to other testifying witnesses in the absence of defendant. Various exceptions were urged to this testimony, which were well taken. The acts and declarations of a co-conspirator after the homicide or termination of the matter involved in the conspiracy are not admissible against anyone except the declarant. This has been the well setted rule in Texas, at least, since Cox et al. v. State, 8 Texas Crim. App., 256; Young v. State, 59 Texas Crim. Rep., 137. The court qualified only one of these bills by stating that Boozer Vasser had, on cross-examination, admitted that he had made contradictory statements. This is all the bill shows with reference to the matter, and this is but a general statement by the court in signing the bill. This does not authorize the introduction of the testimony set out in the bill of exceptions. How the witness contradicted himself and about what is not stated by the judge in his qualification. It is not all contradictory statements that authorize the sustaining of a witness. The contradictory statements must be in reference to matters about which he testified and must be such as are admissible to corroborate matters already testified to, and under such circumstances as to show he was not influenced by some ulterior motive or purpose. A rule sustained by the authorities is that where a State's witness is impeached or attempted to be impeached by showing that he has made statements with reference to the transaction out of court different from and contradictory to his testimony delivered on the trial, it is not error to permit the State to support the witness by showing that shortly after the transaction, and before any motive or inducement existed to fabricate, he made statements of the matter similar to his testimony delivered on the trial.

The authorities will be found collated in sec. 181, p. 110, Branch's Ann. P. C. It is also the rule that where the opposing case is that the witness is prompted by improper or corrupt motives, or where the impeaching evidence goes to charge the witness with a recent fabrication of his testimony, the party introducing such witness may prove that his witness stated the same facts prior to the time when the motive existed, or prior to the occasion which might prompt manufacturing the testimony. These authorities will be found on page 111 of Mr. Branch's Ann. P. C. There is nothing of that sort shown or attempted to be shown by this bill of exceptions. The court in a general way says the witness "on cross-examination made contradictory statements." This may or not have been such as were proper to be corroborated. There is nothing to show that it referred to or was connected with the statements that he made while delivering his testimony. What these statements were and how they were in conflict with each other, or whether the testimony could be shown in support of his testimony on the trial, this bill of exception does not explain; nor is it shown why such testimony should have gone before the jury. If appellant made statements different from those delivered on the trial before the jury, and to meet these the State would be able to show that he made similar statements about the time and in connection with the other statements explanatory of or corroborative of his testimony on the trial, this might be admissible; but that would be entirely owing to how the matter arose. It must be brought within the rule laid down by the authorities cited. This bill of exceptions does not undertake to so show. It is also stated by the authorities that if a witness admits making contradictory statements inquired about, neither party is entitled to prove that he did make such statements. The authorities on this are clear. See 17 Texas Crim. App., 31, 23 Texas Crim. App., 507, 45 Texas Crim. Rep., 71. These authorities might be stretched out indefinitely. Whatever these contradictory statements were, if appellant admitted making them, they could not be proved by other parties, and if admissible through other parties, it is on the theory of corroboration of his statements delivered before the jury. This bill of exceptions does not so present the question.

The other bills are not qualified by the judge. Those bills show error as they are presented by this record.

Another bill of exceptions shows error in the court's ruling in this: that Sam Johnson and Jim Young and others were permitted to testify that they saw Stella Black, in the absence of defendant, Will Black, commit indiscretions with deceased, Green Vasser, the bill showing that Will Black, appellant, knew nothing of this conduct on the part of his wife and Green Vasser before the killing. Said evidence was introduced by the State to prove motive on the part of defendant, Will Black. Young v. State, supra, and Branch's Ann. P. C., sections 1 and 2, where numerous authorities are collated. This evidence was inadmissible.

Another bill recites the defendant placed his wife on the stand, the

substance of her testimony being that on the morning that Green Vasser was killed, and at the time Virgil Vasser stated he and defendant killed him, or acted in conjunction in the killing, appellant was at home with her, and her testimony is of such a nature that if true it contradicted the accomplice testimony as to the presence of defendant at the time and place of the killing. This was all the testimony introduced by the defendant through his wife. She was then asked by the State quite a number of questions with reference to matters not involved in the testimony, nor relevant to that elicited from the wife by defendant. These involved matters of conduct between deceased and appellant's wife, mainly to the effect that deceased visited his house and wife in his absence, and other matters of that character not elicited by the defendant. This testimony should not have gone to the jury. The State by this means was making the wife testify against her husband, and by this manner of cross-examination made her a State's witness as to new matter elicited on cross-examination. The authorities, supra, and a great number of others sustain this bill of exceptions.

The witness Johnson was permitted to testify, over objections of appellant, that he knew appellant's wife and deceased Vasser, and that he had seen deceased at defendant's house on several occasions in the absence of the defendant, and without stating the testimony as delivered, the substance of it is, their conduct was quite reprehensible. It is shown in the bill that appellant was not present, and seems never to have been informed of that fact prior to the killing. This testimony was, under the circumstances, not admissible. See Young v. State, 59 Texas Crim. Rep., 137. The same may be said of the testimony of the witness Young, which was to the effect that he knew the parties, and had at one time Green Vasser, Will Black's wife and Boozer, the accomplice, chopping cotton for him. The pay for all these was handed to Stella Black, wife of appellant. Will Black was not present and knew nothing of it. These matters were inadmissible.

There is another bill of exceptions that may be noticed in a general way. It is not very specific, but it is sufficient to say with reference to it, that unless the matters therein testified are made more certain and definite upon another trial, they should be excluded. This is with reference to horse tracks. The witness testified, in a general way, that he followed horse tracks going from the neighborhood of where the homicide occurred to a certain point, and it is not shown that he measured them or in any way compared them, except by noticing them on the ground, and the fact that one of the tracks was made by a horse that had some peculiar chip or split place in the hoof. If it is undertaken to connect defendant with this horse as tending to show his presence at the time and place of the killing, the evidence should be more specific. The mere opinion of the witness in regard to these being the tracks of appellant's horse will not be sufficient under the predicate laid. The rule laid down in Tanksley v. State, 51 Texas Crim. Rep., 174, seems to be applicable to this bill of exceptions. If tracks are

sought to be used upon another trial, they should be more specific and definite in their identification as the tracks of the horse appellant is supposed to have ridden.

For the reasons indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE, dissents in part.

MORROW, JUDGE.—Concurring in the reversal, I want to make it clear that there is no intention to modify the established rule of evidence which permits the party offering a witness under proper circumstances to support him by proof of prior statements made by him consistent with the evidence he gives on the trial.

PRENDERGAST, JUDGE (dissenting).—The bills of exceptions to the testimony of Mr. DeGraffenreid and Mr. Plott, the sheriff, directly, in their face, show that the witness, "Boozer" Vasser, admitted that he had made contradictory statements, in effect, directly the reverse of what he had testified on this trial. This was proven by the appellant for the very purpose of impeaching his testimony on this trial. Under such circumstances there can be no question but that the State had the right to support his testimony upon this trial as proving, as it did, by said DeGraffenreid and Plott that soon after the killing said witness Vasser made to them statements of the facts corresponding substantially, if not literally, to what his testimony was on this trial. Their testimony was clearly admissible for the purpose of supporting the attempted impeachment of said witness. The court so limited, by his charge, their testimony. The question of proving what the witness Vasser had told before was not an attempt to prove the declaration of a conspirator at all. No such question arose. The testimony was not offered for that purpose.

If the circumstances proven would show or tend to show that appellant knew of the conduct of his wife with the deceased, such testimony would be admissible as showing a motive by appellant to kill the deceased. It would not be necessary to prove his actual knowledge of her intimacy with deceased. Of course, if the testimony showed that he had no notice or knowledge of her conduct then the testimony of the witnesses as to her acts of intimacy would not be admissible.

All the testimony about the horse's tracks was admissible.

I concur in the reversal solely on the admission of the cross-examination of appellant's wife on independent new matters incriminating appellant which were not testified to in any way by her on direct examination.